# Exhibit B

1

2

3

4

5

6

7

8

9

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF KING**

10

11

STUC-O-FLEX INTERNATIONAL, INC., a Washington corporation,

NO.    17-2-30700-9

12

Plaintiff,

**PLAINTIFF'S FIRST AMENDED
COMPLAINT**

13

v.

14

15

16

17

18

19

20

LOW AND BONAR, INC., a Delaware corporation;  WALFLOR INDUSTRIES, INC.,  a  Washington  corporation; WATERWAY  RAINSCREEN,  LLC,  a Washington  limited  liability  company; JOHN  URAL,  an  individual;  MIKE CZERWINSKI,  an  individual;  JIM HEWITT,  an  individual;  and PACIFICWEST  INDUSTRIES,  INC.,  a Washington corporation,

21

Defendants.

22

23

COMES NOW the Plaintiff STUC-O-FLEX INTERNATIONAL, INC. ("Stuc-O-Flex"), by

24

and through its attorneys of record Lasher Holzapfel Sperry & Ebberson PLLC, for the cause of action

25

alleges as follows:

26

PLAINTIFF'S FIRST AMENDED COMPLAINT - 1
{21661/28616/V555940.DOCX}

```
LASHER
HOLZAPFEL
SPERRY &
EBBERSON
```

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

# I.   **PARTIES**

1.1     Plaintiff STUC-O-FLEX INTERNATIONAL, INC. ("Stuc-O-Flex") is a Washington corporation conducting business in King County, Washington.

1.2     Defendant LOW AND BONAR, INC. ("Low & Bonar") is, upon information and belief, a Delaware corporation conducting business in King County, Washington.

1.3     Defendant WALFLOR INDUSTRIES, INC. ("Walflor") is, upon information and belief, a Washington corporation conducting business in King County, Washington.

1.4     Defendant WATERWAY RAINSCREEN, LLC ("Waterway Rainscreen, LLC") is, upon information and belief, a Washington limited liability company conducting business and/or previously conducted business in King County, Washington.

1.5     Defendant PACIFICWEST INDUSTRIES, INC. ("PacificWest") is, upon information and belief, a Washington corporation conducting business and/or previously conducted business in King County, Washington.

1.6     Defendant JOHN URAL ("Ural") is, upon information and belief, an individual residing in the State of Washington and operated a business or businesses that conducts business and/or previously conducted business in King County, Washington.

1.7     Defendant MIKE CZERWINSKI ("Czerwinski") is, upon information and belief, an individual residing in the State of Washington and operated a business or businesses that conducts business and/or previously conducted business in King County, Washington.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

1.8    Defendant JIM HEWITT ("Hewitt") is, upon information and belief, an individual residing in the State of Washington and operated a business or businesses that conducts business and/or previously conducted business in King County, Washington.

## II.    <u>JURISDICTION AND VENUE</u>

2.1    Jurisdiction over this case is properly with the superior court pursuant to RCW 2.08.010.

2.2    Venue is properly with the King County Superior Court in Seattle because the Defendants regularly conduct business in King County and because the facts giving rise to the underlying claim occurred in King County, Washington.

## III.    <u>FACTS</u>

3.1    Plaintiff Stuc-O-Flex has been in business for over 30 years. Stuc-O-Flex markets and distributes stucco and siding products designed for use in residential and commercial construction.

3.2    Stuc-O-Flex primarily promotes and sells a stucco wall system designed to increase the elasticity of the stucco and the durability of the building's external walls and siding.

3.3    As part of its wall assembly system, Stuc-O-Flex holds a patent in a type of rainscreen drainage mat, sold under the trademark "Waterway" and "Waterway Rainscreen." Stuc-O-Flex's rainscreen product consists of a piece of weather resistant fabric and plastic fibers of varying thicknesses. Stuc-O-Flex's rainscreen product is installed between the exterior framing of the home and the stucco finish to facilitate drainage of moisture away from the stucco.

{21661/28616/V555940.DOCX}

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

3.4     Defendant Ural had been a licensed siding contractor (including the installation of stucco siding) in the state of Washington. Ural was a customer of Stuc-O-Flex and in November 2003, Ural was introduced to one of Stuc-O-Flex's senior managers, Dan Johnson. Johnson and Ural cultivated a friendship and business relationship, and over the course of the following eight years, Ural would purchase hundreds of thousands of dollars' worth of products from Stuc-O-Flex for use in his construction business.

3.5     In 2011, Defendant Ural approached Johnson and informed him of his desire to enter into the manufacturing sector. To that end, Ural expressed an interest in purchasing a machine designed to extrude polymer fibers (i.e., make plastic) and adhere the plastic to a sheet of material ("extruder machine."). In other words, Ural wanted to purchase a machine so that he could manufacture the products he had spent years buying from Stuc-O-Flex, including rainscreen. Given their friendship, Johnson wanted Ural's manufacturing venture to succeed; moreover, Johnson also saw an opportunity for Stuc-O-Flex to improve the efficiency of its supply chain by bringing on a local manufacturing partner.

3.6     In November 2011, Defendant Ural, through his contracting business J&R Exterior, LLC, purchased an extruder machine.  Even before Defendant Ural received the extruder machine, Johnson and Stuc-O-Flex assisted Ural during his purchase of the extruder machine, offering advice and support to Ural during the early days of his manufacturing business.

3.7     Separate from his business dealings with Stuc-O-Flex, Ural formed a Canadian company in June, 2011, Water Wave Building Supply, Inc. ("Water Wave"), with a different business

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

partner, Defendant Czerwinski, for the purpose of distributing and selling construction products in Canada, including Stuc-O-Flex's WaterWay Rainscreen products. Stuc-O-Flex was not aware of this business arrangement.

3.8     In March 2012, Ural received his extruder machine.

3.9     In April 2012, Ural established a Washington limited liability company, Waterway Rainscreen, LLC, through which he began to run his manufacturing business.

3.10     After many months of testing and growing pains, on September 5, 2012, Stuc-O-Flex and Ural had worked together to develop a saleable product.  Shortly thereafter, Stuc-O-Flex and Defendant Ural, individually, and Defendant Waterway Rainscreen, LLC entered into an exclusive distributorship agreement, where Stuc-O-Flex agreed to be the exclusive distributor of all products manufactured by Ural for sale in the United States, including but not limited to rainscreen products.

3.11     On September 25, 2012, Ural sold his interest in Water Wave to a different entity, California Products, Inc. ("California Products"), which was owned by Defendant Hewitt. On or about the same time, Defendants Ural, Czerwinski, and Hewitt negotiated and entered into a written manufacturer/distributor agreement between Waterway Rainscreen, LLC and Water Wave, with Water Wave agreeing to act as the exclusive Canadian distributor for Waterway Rainscreen, LLC's products.  Again, Stuc-O-Flex was not aware of this business arrangement.

3.12     On May 29, 2013, after negotiations and revisions,  Stuc-O-Flex entered into an updated written exclusive distribution agreement with Defendant Ural, individually, and Defendant

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

Waterway Rainscreen, LLC ("Exclusive Distribution Agreement"). A true and correction copy of the Exclusive Agreement is attached hereto as **Exhibit A** and incorporated by reference herein.

3.13    Under the Exclusive Distribution Agreement, Stuc-O-Flex agreed to be the exclusive US and Canadian distributor of all products (with the exception of sound control mats) manufactured by Defendants Ural and Waterway Rainscreen, LLC, including rainscreen. In addition, Ural agreed that he would (1) not sell rainscreen products to any party other than Stuc-O-Flex, (2) give Stuc-O-Flex the right of first refusal over the exclusive distribution of any new products manufactured by Ural, except sound control mats, in the United States and Canada, and (3) not increase the price of the rainscreen products he sold to Stuc-O-Flex by more than 3% per year.

3.14    Invoices produced in discovery by Defendants confirm that Defendants Ural and Waterway Rainscreen, LLC sold products, including rainscreen, directly to third parties, such as Water Wave, in violation of the Exclusive Distribution Agreement.

3.15    In June 2014, Stuc-O-Flex began to receive invoices for purchase of rainscreen material from Defendant PacificWest, a corporation owned by Defendants Hewitt and Czerwinski.

3.16    At the time, Ural represented to Johnson that he was using the PacificWest name only in order to procure insurance for his business.

3.17    In actuality, however, Ural was selling his rainscreen products to PacificWest directly, who was then distributing the rainscreen products to customers (including customers other than Stuc-O-Flex) in violation of the Exclusive Distribution Agreement.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

3.18    Invoices produced in discovery by Defendants confirm that Defendants Ural and Waterway Rainscreen, LLC, manufactured and sold products, including rainscreen, for Water Wave so that Water Wave could sell the products directly to third parties, such as Pacific West Systems Supply Inc. aka Pacific West Building Supply ("PWSS") and Uppal Building Supplies, in violation of the Exclusive Distribution Agreement.

3.19    Invoices produced in discovery by Defendants confirm that Defendants Ural and Waterway Rainscreen, LLC, manufactured and sold products, including rainscreen, for Defendant Walflor so that Defendant Walflor could sell the products directly to third parties, such as Macform Alm Products (2012) Ltd., in violation of the Exclusive Distribution Agreement.

3.20    Further, at the end of 2015, without Johnson or Stuc-O-Flex's knowledge, Ural began to explore the sale of his business to Defendants Hewitt and Czerwinski.

3.21    Ultimately, Ural attempted to sell his business two times in 2016. First, on January 10, 2016, Defendants Ural, Hewitt, and Czerwinski, along with Waterway Rainscreen, LLC attempted to enter into an agreement for the purchase of all of Waterway Rainscreen, LLC's stock by Pacific West.

3.22    However, it subsequently became apparent to Defendants Hewitt and Czerwinski that this transaction would not effectuate their intent; the critical asset to Ural's operation, the extruder machine, was not owned by Waterway Rainscreen, LLC, but was in fact owned by a different entity owned by Ural, J&R Exterior LLC.

3.23    Defendants Ural, Hewitt, and Czerwinski would eventually remedy this issue by agreeing that Ural owned the machine individually.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

3.24    On February 10, 2016, Defendants rescinded the Waterway Stock Purchase agreement and entered into a new agreement (the "Machine Purchase agreement"), where a different Hewitt and Czerwinski entity, Defendant Walflor, would purchase the extruder machine from Ural directly. In exchange, Ural received a 33% share of Walflor, and joined the company as Vice President and a Director of the Board of Directors.

3.25    Stuc-O-Flex was completely unaware of this transaction.

3.26    Despite the change in ownership of the extruder machine from Ural to Walflor, the machine itself was never moved and there was no interruption in production.

3.27    Stuc-O-Flex continued to send invoices directly to Ural, irrespective of the company he led Stuc-O-Flex to believe he was operating.

3.28    On January 28, 2016, Johnson received an e-mail from Defendant Hewitt advising him that Ural's business interests were merging with Defendants Hewitt and Czerwinski's businesses. The exact words used by Defendant Hewitt were that the "companies of John Ural, Mike Czerwinski and Jim Hewitt are amalgamating into one company."

3.29    The next day, January 29, 2016, Johnson called Ural and asked him about this transaction. During this conversation, Ural assured Johnson that: the relationship between the parties would not change; the price of the rainscreen mats would not increase; Ural still had some operational control of the company; Walflor would not attempt to sell the rainscreen product to any of Stuc-O-Flex's competitors; and the agreement between Ural and Stuc-O-Flex would continue to be honored by the new company.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

3.30    Invoices produced in discovery by Defendants confirm that Walflor sold products, including rainscreen, directly to third parties, such as Macform Alm Products (2012) Ltd. and Vaproshield, in violation of the Exclusive Distribution Agreement.

3.31    Unbeknownst to Johnson and Stuc-O-Flex, and apparently unbeknownst to Ural, Defendants Hewitt and Czerwinski had ulterior motives for the purchase of Ural's manufacturing business. As early as 2013, Defendants Hewitt and Czerwinski had been in discussions with a multi-national corporation, Defendant Low & Bonar, concerning Low & Bonar's expansion into the rainscreen and sound control mat business in the Pacific Northwest.

3.32    Between 2013 and 2017, Defendants Hewitt and Czerwinski had attempted to build a company with sufficient market share in the rainscreen and sound control mat business that Low & Bonar would be interested in purchasing their business.

3.33    However, once Defendant Walflor acquired ownership over Ural's extruder machine, Defendants Hewitt and Czerwinski were able to enter into negotiations with Low & Bonar for the sale of Walflor.

3.34    By June 24, 2016, less than six (6) months after the "amalgamation of Defendants Ural, Hewitt, and Czerwinski's businesses," Defendants Ural, Hewitt, and Czerwinski, as well as their company, Walflor, signed a letter of intent with Low & Bonar related to Low & Bonar's interest in acquiring Walflor.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

3.35    On January 17, 2017, within one year of the Machine Purchase agreement closing, Defendants Hewitt, Czerwinski, and Ural sold Walflor, its stock, and all of its assets, to Defendant Low & Bonar ("Stock Purchase Agreement").

3.36    Notably, the due diligence reports provided to Low & Bonar as part of the Stock Purchase Agreement consolidated the financial accounts of Walflor, Water Wave, Waterway Rainscreen, LLC, and PacificWest. Further, despite being required to identify all material contracts in effect at the time of the sale, Ural's Exclusive Distribution Agreement with Stuc-O-Flex was not included or disclosed as a material contract between Walflor and Low & Bonar.

3.37    Shortly after Low & Bonar completed its acquisition of Walflor, Low & Bonar acting through Walflor, sent Johnson a letter advising him that the price of rainscreen would increase approximately 7% in 2017.

3.38    Further, in the months that followed, Low & Bonar proceeded to manufacture and sell rainscreen products to a number of different entities, including Stuc-O-Flex's competitors, without Stuc-O-Flex's permission.

## IV.    FIRST CAUSE OF ACTION:  BREACH OF CONTRACT

4.1    Plaintiff reasserts the paragraphs stated above as though fully set forth herein.

4.2    Stuc-O-Flex entered into a valid and enforceable Exclusive Distribution Agreement with Defendants Ural and Waterway Rainscreen, LLC.

4.3    Defendants Ural and Waterway Rainscreen, LLC sold products, including rainscreen, directly to third parties in violation of the Exclusive Distribution Agreement.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

4.4    Defendants Ural and Waterway Rainscreen, LLC sold rainscreen products to PacificWest directly, who was then distributing the rainscreen products to customers (including customers other than Stuc-O-Flex) in violation of the Exclusive Distribution Agreement.

4.5    Defendants Ural and Waterway Rainscreen, LLC, manufactured and sold products, including rainscreen, for Water Wave so that Water Wave could sell the products directly to third parties in violation of the Exclusive Distribution Agreement.

4.6    Defendants Ural and Waterway Rainscreen, LLC, manufactured and sold products, including rainscreen, for Defendant Walflor so that Defendant Walflor could sell the products directly to third parties in violation of the Exclusive Distribution Agreement.

4.7    Defendant Walflor assumed the contractual obligations of Defendants Ural and Waterway Rainscreen, LLC, including those pertaining to the Exclusive Distribution Agreement, as part of the formation of Walflor.

4.8    Defendant Walflor sold products, including rainscreen, directly to third parties in violation of the Exclusive Distribution Agreement.

4.9    Defendant Low & Bonar assumed the contractual obligations of Walflor, including those pertaining to the Exclusive Distribution Agreement, when it acquired Walflor as part of a Stock Purchase Agreement.

4.10    Low & Bonar manufactured and sold rainscreen products to a number of different entities, including Stuc-O-Flex's competitors, without Stuc-O-Flex's permission in violation of the Exclusive Distribution Agreement.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

4.11    Low & Bonar, acting through Walflor, increased the price of rainscreen approximately 7% in 2017 in violation of the Exclusive Distribution Agreement.

4.12    Plaintiff Stuc-O-Flex is entitled to recover its damages sustained as a direct, proximate, and foreseeable result of Defendants' breaches of the Exclusive Distribution Agreement, in an amount to be proven at trial.

## V.    SECOND CAUSE OF ACTION:  TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

5.1    Plaintiff reasserts the paragraphs stated above as though fully set forth herein.

5.2    Stuc-O-Flex entered into a valid and enforceable Exclusive Distribution Agreement with Defendants Ural and Waterway Rainscreen, LLC.

5.3    Defendants Low & Bonar, Walflor, PacificWest, Hewitt, and Czerwinski knew of the binding Exclusive Distribution Agreement between Plaintiff Stuc-O-Flex and Defendants Ural and Waterway Rainscreen, LLC.

5.4    Through the above-referenced actions, Defendants intentionally interfered with Plaintiff Stuc-O-Flex's binding Exclusive Distribution Agreement with Defendants Ural and Waterway Rainscreen, LLC and sought to deny Plaintiff Stuc-O-Flex the benefit of its bargain under the Exclusive Distribution Agreement.

5.5    Through the above-referenced actions, Defendants intentionally interfered with Plaintiff Stuc-O-Flex's customers in the United States and Canada that Stuc-O-Flex sought to protect when it entered into the Exclusive Distribution Agreement with Defendants Ural and Waterway

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

Rainscreen, LLC and sought to deny Plaintiff Stuc-O-Flex the benefit of its bargain under the Exclusive Distribution Agreement.

5.6     Defendants' actions were not legally privileged.  Defendants intended to interfere with Defendants Ural and Waterway Rainscreen, LLC's contractual obligations or should have known that their actions would interfere with Defendants Ural and Waterway Rainscreen, LLC's contractual obligations under the Exclusive Distribution Agreement.

5.7     Defendants' actions were not legally privileged.  Defendants intended to interfere with Plaintiff Stuc-O-Flex's customers in the United States and Canada that Stuc-O-Flex sought to protect when it entered into the Exclusive Distribution Agreement with Defendants Ural and Waterway Rainscreen, LLC or Defendants should have known that their actions would interfere with Plaintiff Stuc-O-Flex's customers in the United States and Canada that Stuc-O-Flex sought to protect when it entered into the Exclusive Distribution Agreement with Defendants Ural and Waterway Rainscreen, LLC.

5.8     Plaintiff Stuc-O-Flex has been damaged and will continue to be damaged as a result of Defendants' tortious interference with rights and privileges afforded Plaintiff Stuc-O-Flex pursuant to the Exclusive Distribution Agreement, in an amount to be proven at trial.

## VI.     THIRD CAUSE OF ACTION: TRADEMARK VIOLATION

6.1     Plaintiff reasserts the paragraphs stated above as though fully set forth herein.

6.2     Stuc-O-Flex has been in business for over 30 years.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

6.3     Stuc-O-Flex markets and distributes stucco and siding products designed for use in residential and commercial construction.

6.4     Stuc-O-Flex primarily promotes and sells a stucco wall system designed to increase the elasticity of the stucco and the durability of the building's external walls and siding.

6.5     As part of its wall assembly system, Stuc-O-Flex holds a patent in a type of rainscreen drainage mat, sold under the trademark "Waterway" and "Waterway Rainscreen."

6.6     Stuc-O-Flex is an established building supply company and its "Waterway" and "Waterway Rainscreen" line of rainscreen products are protected Trademarks under the Lanham Act § 43(a), federal common law, and Washington State Common law.

6.7     The names "Waterway" and "Waterway Rainscreen" are so well established in the marketplace of stucco wall systems that the names act as a designator of Stuc-O-Flex goods and services.  The names therefore qualify as a trademark under federal and Washington State trademark laws.

6.8     Defendants Walflor and Low & Bonar were using Plaintiff Stuc-O-Flex's protected trademarks without Stuc-O-Flex's authorization in the same geographic areas in which Plaintiff distributes its products.

6.9     Invoices produced in discovery reflect that Walflor, both pre-and-post acquisition by Low & Bonar, was selling rainscreen product to a Canadian company, PWSS, invoiced as "Waterway" Rainscreen. However, PWSS did not receive "Waterway Rainscreen" product from Walflor/ Low & Bonar, but instead received a generic black drain mat.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

6.10    Suppliers who had ordered and been invoiced for "waterway rainscreen" products by PWSS were receiving generic "wall drain," a Walflor/ Low & Bonar product.

6.11    This is entirely consistent with Defendants Ural, Czerwinski, and Hewitt's past practices pertaining to Stuc-O-Flex's trademarks, including the use of "Stuc-O-Flex" name in commerce without Plaintiff's authorization.

6.12    Defendants' acts of using the names "Waterway" and "Waterway Rainscreen" for purposes of marketing selling materials to third-parties constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 and Washington State common law.

6.13    Defendants' acts of using the names "Waterway" and "Waterway Rainscreen" for purposes of marketing and selling materials to third-parties are false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, by causing confusion, mistake, and/or deception on the part of the consuming public who are likely to mistakenly believe that Defendants' products are somehow the same as Stuc-O-Flex's "Waterway" and "Waterway Rainscreen" line of rainscreen products, when they are not.

6.14    Defendants' acts complained of herein are being conducted with full knowledge of Plaintiff Stuc-O-Flex's rights, and such acts therefore constitute willful infringement entitling Plaintiff Stuc-O-Flex to treble damages under 15 USC § 1117(a).

6.15    By reason of the acts complained of herein, Plaintiff Stuc-O-Flex has suffered, and will continue to suffer irreparable damage unless Defendants are enjoined from continuing its wrongful acts.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

6.16    Plaintiff has no adequate remedy at law.

**VII.    FOURTH CAUSE OF ACTION: VIOLATION OF THE CONSUMER PROTECTION ACT**

7.1    Plaintiff reasserts the paragraphs stated above as though fully set forth herein.

7.2    Defendants acts of using the names "Waterway" and "Waterway Rainscreen" for purposes of marketing and selling materials to third-parties constitute an unfair and deceptive act or practice under the Washington Consumer Protection Act, ("WCPA"), RCW § 19.86.010.

7.3    Defendants' unfair and deceptive acts and practices are occurring within the conduct of trade or commerce within the meaning of the WCPA.

7.4    Defendants' unfair and deceptive acts and practices adversely affect the public interest because, without limitation, they deceptively and repeatedly redirect consumers searching for the Plaintiff Stuc-O-Flex's "Waterway" and "Waterway Rainscreen" line of rainscreen products to the Defendants' products.

7.5    Defendants' unfair and deceptive acts and practices adversely affect the Plaintiff Stuc-O-Flex business because Defendants are selling materials to third-parties who might otherwise have purchased Plaintiff Stuc-O-Flex's "Waterway" and "Waterway Rainscreen" line of rainscreen products.

7.6    Pursuant to the WCPA, Plaintiff is entitled to injunctive relief, and to recover actual damages, punitive damages, and costs and reasonable attorney fees.

**VIII.    FIFTH CAUSE OF ACTION: ALTER EGO / PIERCING CORPORATE VEIL**

8.1    Plaintiff reasserts the paragraphs stated above as though fully set forth herein.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

8.2     In equity a court may pierce a corporate veil (1) to impose liability upon corporate officers for frauds committed by the corporation, (2) to impose liability when acts or knowledge of the corporation and corporate officers are one and the same, and (3) when a corporation has been undercapitalized or the corporate form has not been properly maintained.

8.3     To the extent the activities of Defendants Hewitt and Czerwinski are deemed to be one in the same as activities of Defendant PacificWest, the Court should pierce the corporate veil of PacificWest to hold Defendants Hewitt and Czerwinski jointly and severally liable.

8.4     To the extent the activities of Defendants Ural, Hewitt, and Czerwinski are deemed to be one in the same as activities of Defendant Walflor, the Court should pierce the corporate veil of Walflor to hold Defendants Ural, Hewitt, and Czerwinski jointly and severally liable.

8.5     To the extent the activities of Defendant Low & Bonar are deemed to be one in the same as activities of Defendant Walflor, the Court should pierce the corporate veil of Walflor to hold Defendant Low & Bonar jointly and severally liable.

8.6     To the extent that Defendant Walflor is an alter ego of Defendants Ural, Hewitt, and Czerwinski in which the acts of Defendant Walflor and Defendants Ural, Hewitt, and Czerwinski are one and same, the Court should pierce the corporate veil and hold Defendants Ural, Hewitt, and Czerwinski jointly and severally liable.

8.7     To the extent that Defendant Walflor is an alter ego of Defendant Low & Bonar in which the acts of Defendant Walflor and Defendant Low & Bonar are one and the same, the Court should pierce the corporate veil and hold Defendant Low & Bonar jointly and severally liable.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

8.8    To the extent that Defendants Waterway Rainscreen, LLC, PacificWest, Walflor, and/or Low & Bonar is/are undercapitalized or the corporate forms were not properly maintained, the Court should pierce the corporate veil and hold Defendants Ural, Hewitt, Czerwinski, and/or Low & Bonar jointly and severally liable.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief as against Defendants:

1.    For a Judgment against Defendants for actual damages and for attorney fees and costs incurred by reason of Defendants' breach of the violation of Exclusive Distribution Agreement;

2.    For a Judgment against Defendants for actual damages, for treble damages and for attorney fees and costs incurred by reason of Defendant's violation of federal and Washington state trademark laws;

3.    For a Judgment against Defendants for actual damages, punitive damages, and attorney fees and costs incurred by reason of Defendants' violation of Washington's Consumer Protection Act;

4.    For a judgment against Defendants for actual damages, costs, attorney fees and such other relief as is proper by reason of Defendants' tortious interference with business expectancy;

5.    For entry of an order piercing the corporate veil of Defendants Waterway Rainscreen, LLC, PacificWest, Walflor, and/or Low & Bonar, and holding Defendants Ural, Hewitt, Czerwinski, and/or Low & Bonar jointly and severally liable for all damages awarded herein; and

6.    For such other and further relief as the Court deems just and equitable under the

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

circumstances.

DATED this 17 day of September, 2018.

LASHER HOLZAPFEL
SPERRY & EBBERSON PLLC

Sean V. Small, WSBA # 37018
Mario Bianchi, WSBA # 31742
Paul Spadafora, WSBA # 49777
Attorneys for Plaintiff

PLAINTIFF'S FIRST AMENDED COMPLAINT - 19
{21661/28616/V555940.DOCX}

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
FAX 206 340-2563

# EXHIBIT A

## DISTRIBUTORSHIP AGREEMENT

This Agreement by and between STUC-O-FLEX INTERNATIONAL, INC. (hereinafter called " Distributor "), a Washington corporation, and WATERWAY RAINSCREEN LLC and/or Mr. John Ural (hereinafter called "Supplier"), a Washington corporation, is made on this 5th day of November, 2012.

R E C I T A L S:

A. Supplier is in the business of Manufacturing Rainscreen & Ventilation Mats, and related products and goods (all hereinafter called "products and goods").

B. Distributor is in the business of purchasing construction products at wholesale and reselling the same to the building materials industry.

C. Supplier desires to contract with Distributor to distribute its manufactured products within a certain territory.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the parties hereto agree as follows:

1. Appointment: Supplier hereby appoints Distributor, and Distributor accepts such appointment, to distribute Supplier's manufactured products on the terms and conditions as hereinafter set forth. The parties hereby agree to be bound by and to act and perform in accordance with the terms and conditions of this Agreement.

2. Territory: Supplier hereby authorizes Distributor to act as Supplier's Exclusive Master Distributor in the United States and Canada, (hereinafter the "Territory") with respect to all Supplier's manufactured products and goods. Excluding all products Manufactured / Marketed for "Sound Control" applications. Distributor agrees to not to market, sell or make any claim on sound control mats. It is further agreed by the parties, the products shall not be sold, labeled, marketed or offered for interior sound control applications.

In the event a Stuc-O-Flex competitor (Dryvit, Sto, Senergy, Parex, Omega, Etc..) has interest in purchasing the products, but is unwilling to order from Stuc-O-Flex International, Upon written agreement between the parties (Supplier and Distributor) Supplier may sell direct to Stuc-O-Flex competitors and compensate Distributor at $00.02 a sq. ft.

3. Product Description: Distributor shall initially distribute the following Products of Supplier and any such further Products. The initial Products to be sold by Distributor are as follows:

Description: Rainscreen & Ventilation Mats

Mats consisting of an extruded polymer matrix of tangled monofilaments. The monofilaments are sometimes laminated to a moisture resistant filter fabric with high perm rating on the outer side.

1

All products and goods supplied by the Supplier to the Distributor are to be manufactured in Monroe, Washington. The Supplier will not supply to the Distributor material not manufactured in Monroe, WA. without written acceptance by the Distributor prior to shipment.

4. Price, Payment of Price:

(a) Price. The current prices for the products are listed below and by this reference fully incorporated herein. Supplier may revise prices to Distributor, after giving Ninety (90) Days notification.

PRICE:          $00.23 Per Sq. Ft. (USD) Rainscreen with filter fabric /3mm

               $00.26 Per Sq. Ft. (USD) Rainscreen with filter fabric / 7mm & 11mm

               $00.20 per Sq. Ft. (USD) Rainscreen mats without filter fabric

               $00.28 Per Sq. Ft. (USD) Rainscreen laminated to Vapro-Shield

               7mm & 11mm / (Client to supply Vapro-Shield Fabrics)

Maximum annual price increase shall not exceed 3 % per year.

(b) Initial Inventory of Product. Distributor will purchase an initial truckload of the Products

(c) Freight Charges. Distributor shall arrange transportation for each order placed with Supplier. Supplier agrees to load all containers, trucks, trailers and will call orders at the Monroe, WA location.

(d) Payment of Purchase Price. Distributor shall pay in full, on a Net 30 - thirty (30) day basis, all of Supplier's invoices for products pursuant to Distributor's orders. Supplier may refuse to sell products to Distributor at any time that Supplier is not current with these agreed upon terms.

(e) When supplier provides product delivered to distributor's specified location, Distributor agrees to pay in full for those products delivered within 10 days on the delivery date.

Duties of Distributor. Distributor covenants and agrees as follows:

(a) To sell and promote the sale of Supplier's manufactured product covered by this Agreement in accordance with the terms and conditions of this Agreement.

(b) To comply with all the terms, covenants and conditions of this Agreement.

(c) To take only such actions which enhance the reputation of Supplier.

(d) To train and maintain a sales organization to sell Products within the territory and in accordance with the terms and conditions of this Agreement.

2

(e) To maintain within the Territory an inventory of the Products and adequate storage or warehouse facilities therefore.

(f) To establish and maintain an adequate business office, equipped and other reasonably necessary office equipment, supplies and personnel.


5. Supplier's Responsibilities. Supplier shall perform the following services:

(a) Supplier understands and agrees that WaterWay Rainscreen is a Trademark of Distributor and further agrees to immediately change the company WaterWay Rainscreen LLC to a different name not infringing on distributor's trademarks. The selected name must prevent confusion in the market place with respect to distributor's trademarked products.

(b) Supplier will exert reasonable efforts to supply the needs of the Distributor for the Product to meet the demands within the Territory, but reserves the right reduce, combine or otherwise reasonably modify orders upon acceptance thereof and to allocate its Products among its customers to accommodate its production schedules and to deal with scarcity of supply;

(c) Supplier agrees to provide Products to Distributor of a quality as represented by Supplier submitted samples / specifications (agreed upon by the parties) for each product Distributor will market.

(d) Supplier will not supply material stipulated in item 3 above, or any other extruded polymer matrix of tangled monofilament products that may be agreed on in the future, into the described Territory, either under the trade name described therein, or any exact or similar product designated under any label, trade name or description.

(e) The Supplier will give Distributor the first right of refusal to the exclusivity in the territory for any and all new extruded polymer matrix of tangled monofilament products manufactured by the Supplier. Excluding all products Manufactured / Marketed for "Sound Control" applications.

(f) Supplier agrees to utilize its best efforts to purchase and pay for a minimum $750,000.00 worth of distributors manufactured products after signing the agreement.

6. Rebates. Supplier agrees to Rebate Distributor 3.0% of the total invoiced amount from dollar 1, if Distributor purchases and payments reach $900,000.00 in the form of Co-Op advertising credit and 5% from dollar 1 if Distributor purchases and payments exceed $1,300,000.00 in the calendar year. This Rebate will be provided in a credit for future purchases of the product outlined in the agreement.

7. Term.

(a) This Agreement shall remain in effect for a period of two (2) years from the date hereof, and thereafter it shall be extended automatically on a year to year basis subject to the termination

3

rights set forth within. It is further agreed if the supplier sells the company, this contract will remain in effect and purchasing party will be bound by the terms set forth in this agreement.

(b) Either party may cancel and terminate this Agreement by giving at least One Hundred and Eighty (180) days written notice thereof. Unless any of the following termination acts occur:

(c) The parties may cancel and terminate this Agreement by giving the other party fifteen (15) days' written notice if any of the following termination acts occur:

(i) If either party makes any assignment of assets of the business for the benefit of creditors other than in the normal course of business;

(ii) If a trustee or receiver is appointed to administer or conduct its business or affairs and is not discharged within sixty (60) days of appointment;

(iii) If it is adjudged in legal proceedings to be in either voluntary or involuntary bankruptcy; provided, however, if any of the proceedings are instituted in Chapter 11 of the U.S. Bankruptcy Code or any other federal or state laws whereby Distributor will be able to continue in business thereafter, this Agreement shall continue in effect;

(iv) Any act of fraud practiced by Distributor on Supplier, or any act of fraud practiced by the Supplier on the Distributor.

**Note:** Because Distributor has contractual obligations to some clients, Supplier agrees to continue to supply the products for a minimum 180 day period without delay or disruption.

8. Non-Competition. The Supplier acknowledges and agrees that the Distributor is engaged in a highly competitive business and that if the Supplier should engage in a business which is directly competitive with the business of Distributor, then the Distributor will incur irreparable harm. Therefore, the Supplier covenants and agrees that so long as the parties are contractually bound by this Agreement, and for a period of eighteen (18) months after the date of termination or expiration of this Agreement, the Supplier will not, directly or indirectly, within the territory sell (whether wholesale or retail), represent, distribute or commercially handle products and goods which are competitive with Distributors products and goods, without Distributor's written consent to do so, including the sale to any third party. The Supplier further agrees not to sell any of the Distributor's customers for a minimum 18 months after termination of this agreement, including any and all private label customer or customers introduced, offered, recommended or introduced to Supplier by the Distributor.

9. Risk of Loss / Insurance. The Distributor shall bear the risk of loss for all products and goods acquired from Supplier upon delivery to Distributor's warehouse. Supplier's responsibility ends with the pick-up of products and goods to Distributor. Claims for shortage or damage in transit must be made by Distributor within 24 hours of delivery to Distributor's designated location(s). The Distributor agrees to maintain fire and theft insurance covering the products.

10. Defective Products and Goods. The Distributor shall inspect all the products and goods promptly upon delivery. Any defect in the products and goods shall be reported to the Supplier within 24 hours after the Distributor or customer has, or should have had, knowledge thereof. The Supplier shall have the option of either replacing the products and goods which are found defective and which have been returned at the Supplier's expense, or refunding back to the Distributor the Supplier's invoice price for such products and goods. All losses resulting from failure to so report defective products and goods within such period provided above shall be borne by the Distributor, and all claims with respect to such losses are hereby waived.

11. Warranties. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE PRODUCT OR GOODS, IF ANY, AND THERE ARE NO PROMISES, AGREEMENTS, IMPLIED OR EXPRESSED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY OR UNDERSTANDING OTHER THAN SET FORTH ON THE FACE OF THE PRODUCT OR GOOD. All warranties, if any, run solely from manufacturer to end-user customer. This disclaimer and limitation on warranties has been exclusively bargained between the parties.

12. Trademark Protection. The Distributor is the owner of the trademarks and names and graphic designs (collectively "the Marks"), which identify the Products and which are valuable assets of the Distributor. It is vital to the business of the Distributor that the marks be associated only with the marketing methods of the highest quality and that the customer's acceptance and good will inherent in the marks be preserved and enhanced in the course of sales of the Products.

The Distributor hereby grants Supplier the right, as limited by this Agreement, to utilize the Marks to resell to the building trade in the Territory and Canada only such of the Products as are purchased by the Distributor from the Supplier. No right to transfer, encumber or sublicense any right with respect to any of the Marks is granted hereby, except that, only within the Territory, resale of the Products bearing the Marks to authorized retailers of the Products shall authorize such retailers to utilize the Marks to identify the Products in the course of their trade consisting solely of selling the Products within the Territory to consumers.

The Supplier will not repackage or combine with other goods any of the Products, or use the name or any trademark of the Distributor, in any advertising, public relations or promotions, without the Distributors prior expressed written consent. The Distributor will not unreasonably withhold its consent, except that the Distributor need not consent to any packaging, advertising or other use of any such name or trademark which in its sole judgment is illegal, in bad taste, or inconsistent with its marketing policies or objectives.

13. Resale Pricing. The prices charged and credit terms, if any, offered by the Distributor are within the sole discretion of Distributor.

14. Personal Services. Supplier and the person signing this Agreement on behalf of the Supplier agree that said person will personally manage the discharge of all duties of the Supplier hereunder, full time and on site, devoting his or her best personal efforts to the discharge of said duties in accordance with the letter and spirit of this Agreement and refraining from all activities which might detract from the rendition of such personal management. The Supplier represents, warrants

5

and covenants that the personal knowledge, skills and experience of said person are unique and valuable and will at all times hereunder be valuable to the Distributor for the purpose of carrying out the terms hereof. The provisions of this section are material inducement to the Distributor to enter into this Agreement and constitute valuable consideration bargained for by the Distributor in entering into this Agreement.

No duty of the Supplier hereunder may be delegated or assigned and no part of the Supplier hereunder may be sold, assigned, transferred or licensed in whole or in part in any manner whatsoever without the prior written consent of the Distributor. The Distributor will not in bad faith withhold its consent to delegation of duties or transfer of rights hereunder to a business successor of the Supplier, but may take into account any business factor in determining whether to grant consent and accord any such factors such weight as it may determine in its sole discretion.

15 Survival of Obligations.  Termination of this Agreement, regardless of the reason, will not release either party from any liability that at the time of termination has already accrued to the other party or which thereafter may accrue in respect of any act or omissions prior to such termination.

16. Severability. If any provision of this Agreement is contrary, prohibited by or deemed invalid under applicable laws or regulations of any jurisdiction in which it is sought to be enforced, then such provision shall be deemed inapplicable and deemed omitted, but shall not invalidate the remaining provisions hereof.

17. Confidentiality. All trade secrets and confidential information Supplier or Distributor may obtain from the other pursuant to this Agreement shall be kept confidential and shall not be disclosed to any third party.

18. Notices. Any notice required or permitted hereunder shall be in writing and be served personally or sent by certified mail, return receipt requested, enclosing such notice in a postage paid envelope or sent by e-mail, telefax or cable, directed as follows:

Stuc-O-Flex International, Inc.
17639 N.E. 67th Court
Redmond, Washington 98052
ATTENTION: Dan Johnson, Technical Sales Manager

WaterWay Rainscreen LLC and/or Mr. John Ural
17675 147th Street SE
Monroe, WA  98272
ATTENTION: John Ural, President

Any notice or instruction, if served personally, shall be deemed to have been given on the date on which it was served. If transmitted by e-mail, telefax or cable, it shall be deemed to have been given at the opening of business in the office for the addressee on the next business day following its transmission, unless otherwise agreed in writing. If mailed, it shall be deemed to have been given on the second business day following its mailing. Either party may change its address for

6

notice from time to time by notice given to the other party in accordance with the notice procedures.

19. Descriptive Paragraph Headings. The descriptive paragraph headings in this Agreement are inserted for convenience only and references to this Agreement are not to be indicative of the content of any paragraph or subparagraph.

20. Benefit. This Agreement shall bind and inure to the benefit of each party, its successors and assigns.

21. Waiver. Failure of any party to insist in any one or more instances upon strict performance by the other of its obligations hereunder shall not constitute a waiver or relinquishment of any such obligation for the future, and the same shall continue in full force and effect.

22. Integration and Modification. This is the entire agreement between the parties. There are no other agreements or representations not set forth herein. This Agreement may not be modified except in writing and signed by each party.

23. Jurisdiction/Governing Law. If either party purses any legal action against the other party, it is acknowledge and agree that this Agreement shall be construed in accordance with the laws of King County in the State of Washington.

24. Attorney's Fees. In the event either party to this Agreement seeks the assistance of legal counsel to enforce or defend this Agreement or to maintain or defend any arbitration, action or other proceeding arising out of or related to this Agreement, then the prevailing party in any such action, demand, arbitration or defense shall be entitled to recover from the other party said prevailing party's reasonable attorneys' fees incurred, together with costs and expenses.

25. Representation As To Corporate Authority. All corporate parties hereto and individuals executing these documents on behalf of said corporations warrant that said corporations have corporate authority to enter into this Agreement and that the individual executing on behalf of each corporation has the authority to execute this Agreement on behalf of the respective corporation.

DATED this 28th day of June, 2013

DISTRIBUTOR:                                  SUPPLIER:

STUC-O-FLEX INTERNATIONAL, INC.               WaterWay Rainscreen LLC and/or Mr. John Ural

By _____                    By _____

Date: 5 / 29 / 13                              Date: 5 / 29 / 2013

Name: Dan Johnson                              Name: John Ural

Title: Technical Sales Manager                 Title: President

7