The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STUC-O-FLEX INTERNATIONAL, INC., a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LOW AND BONAR, INC., a Delaware corporation; WALFLOR INDUSTRIES, INC., a Washington corporation; WATERWAY RAINSCREEN, LLC, a Washington limited liability company; JOHN URAL, an individual; MIKE CZERWINSKI, an individual; JIM HEWITT, an individual; and PACIFICWEST INDUSTRIES, INC., a Washington corporation,<br><br>Defendants. | No. 2:18-cv-01386-RAJ<br><br>**ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS** |

This matter comes before the Court on Defendant's Partial Motion to Dismiss (Dkt. # 12). Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons stated below, Defendants' Motion is **GRANTED**. Dkt. # 12.

ORDER-1

## I. BACKGROUND

The following is taken from Plaintiff's Amended Complaint (Dkt. # 1-2), which is assumed to be true for the purposes of this motion to dismiss, along with any judicially noticed documents.[1] *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

Plaintiff, Stuc-O-Flex International, Inc. ("Stuc-O-Flex" or "Plaintiff") is a Washington-based distributor of stucco and siding products. Dkt. # 1-2 at ¶ 3.1. One of the products patented and distributed by Plaintiff is "Waterway Rainscreen," a rainscreen product that is installed between the exterior framing of a home and the stucco finish to facilitate drainage of moisture away from the stucco. *Id.* at ¶ 3.3.

Defendant John Ural ("Defendant Ural" or "Ural") was a licensed siding contractor in Washington, when he became a customer of Stuc-O-Flex in 2003. *Id.* at ¶ 3.4. In 2011, Defendant Ural decided to enter the manufacturing sector and purchased an "extruder" machine which would allow him to manufacture, among other things, rainscreen products. Dkt. # 1-2 at ¶ 3.5. After receiving the machine, Defendant Ural formed a separate manufacturing entity, Defendant Waterway Rainscreen, LLC ("Defendant Waterway" or "Waterway"). *Id.* at ¶ 3.9.

In 2012, Plaintiff entered into an exclusive distribution agreement with Defendants Ural and Waterway. *Id.* at ¶ 3.10. Under the agreement, Plaintiff agreed to be the exclusive distributor of all products manufactured by Defendant Ural within the United States. *Id.* In March 2013, Plaintiff and Defendants Ural and Waterway entered

---

[1] Defendants ask the Court to take judicial notice of Dkt. # 13-1, the stock purchase agreement between Defendants Low & Bonar, Inc. and Walflor Industries, Inc. Dkt. # 12 at 10. In the context of a motion to dismiss, the Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). However, the Court may consider documents that are referenced extensively in the complaint or form the basis for plaintiff's claim, when determining whether the allegations of the complaint state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003). Because the stock purchase agreement falls within this exception, the Court will consider this document in connection with Defendants' Motion.

ORDER-2

into an updated distribution agreement, extending the agreement to include both United States *and* Canadian markets. *Id.* at ¶ 3.13. In exchange, Defendant Ural agreed not to sell rainscreen products to any other third parties. *Id.*

In 2011, Defendant Ural also formed a Canadian company, Water Wave Building Supply, Inc. ("Water Wave"), with Defendant Mike Czerwinski ("Defendant Czerwinski"), for the purpose of distributing and selling its products in Canada. *Id.* at ¶ 3.7. On September 25, 2012, Defendant Ural sold his interest in Water Wave to Defendant Jim Hewitt ("Defendant Hewitt") and Water Wave entered into a distribution agreement with Defendant Ural, under which Water Wave agreed to be the exclusive distributor of Defendant Ural's products in Canada. *Id.* at ¶ 3.11.

At some point, Plaintiff began to receive invoices for its rainscreen products from Defendant PacificWest ("PacificWest"), another company owned by Defendants Hewitt and Czerwinski. *Id.* at ¶ 3.14. According to Plaintiff, Ural said that he was just using the PacificWest name for insurance purposes, when in fact, he was selling the rainscreen products to PacificWest directly, in violation of Plaintiff's distribution agreement. *Id.* at ¶¶ 3.16–3.17. Plaintiff alleges that Ural was also selling its rainscreen products to Water Wave and Defendant Walflor Industries, Inc. ("Walflor"), a third Hewitt/Czerwinski entity, and that Water Wave and Walflor were selling the products to other third parties. *Id.* at ¶¶ 3.18–3.19.

In 2015, Defendant Ural attempted to sell 100% of his Waterway stock to PacificWest. *Id.* at ¶ 3.21. According to Plaintiff, the parties ran into an issue because the extruder machine was not owned by Waterway directly, but rather a different Ural entity. *Id.* at ¶ 3.22. On February 10, 2016, Defendants Ural, Hewitt, and Czerwinski agreed that Ural would sell the extruder machine to Walflor and, in exchange, he would receive a 33% share of Walflor and join Walflor as a Vice President and member of the Board of Directors. *Id.* at ¶ 3.24. Plaintiff learned of the sale by email in January 2016. *Id.* at ¶ 3.28. According to Plaintiff, Defendant Ural represented that Plaintiff's

ORDER-3

exclusive distribution agreement would still be honored by Walflor when, in fact, Walflor was selling rainscreen products to other third parties. *Id.* at ¶¶ 3.29–3.30.

After Walflor purchased the extruder machine, Defendants Ural, Hewitt, Czerwinski, and Walflor executed a letter of intent with Defendant Low & Bonar ("Low & Bonar" or "Defendant Low & Bonar"), a multi-national corporation purportedly interested in expanding into the rainscreen and sound control mat business. *Id.* at ¶¶ 3.31–3.34. On January 17, 2017, the parties executed a stock purchase agreement, under which Low & Bonar purchased 100% of Walfor's stock. *Id.* at ¶ 3.24. Stuc-O-Flex's exclusive distribution agreement with Defendant Ural was not listed as a material contract during the due diligence process, prior to the sale. *Id.* at ¶ 3.36. Shortly after the sale closed, Low & Bonar informed Plaintiff that it was increasing the price of the rainscreen product to 7%. *Id.* at ¶ 3.37. Low & Bonar also proceeded to manufacture and sell rainscreen products to other third parties. *Id.* at ¶ 3.38.

On November 29, 2017, Plaintiff filed suit in King County Superior Court, alleging breach of contract, tortious interference, trademark infringement, and Washington Consumer Protection Act claims. Dkt. # 1-1. Plaintiff subsequently amended its complaint (Dkt. # 1-2), incorporating federal trademark claims, and on September 17, 2018, Defendants removed to this Court. Dkt. # 1. Defendants now move to dismiss Plaintiff's breach of contract claim as to Defendant Low & Bonar and the tortious interference and alter ego/veil piercing claims as to all Defendants. Dkt. # 12.

## II. DISCUSSION

The question for the Court on a motion to dismiss is whether the facts in the complaint and judicially-noticed documents sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of

ORDER-4

action." *Twombly*, 550 U.S. at 555. If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530, 534 (9th Cir.1984).[2]

### 1. **Breach of Contract**

Defendants first argue that Plaintiff has failed to state a claim for breach of contract against Defendant Low & Bonar. Dkt. # 12 at 10. In Washington, a plaintiff claiming breach of contract must prove: (1) the existence of a valid agreement (2) breach of the agreement, and (3) damages. *Univ. of Wash. V. Gov't Emps. Ins. Co*., 200 Wn. App. 455, 467 (citing *Leher v. State, Dep't of Social & Health Servs*., 101 Wn. App. 509, 516 (2000)). Defendants argue that Plaintiff's breach of contract claim against Low & Bonar must fail because it has not pled the first element – the existence of a contract between Low & Bonar and Stuc-O-Flex. Dkt. # 12 at 11.

In the Amended Complaint, Plaintiff alleges that Low & Bonar "assumed" its exclusive distribution agreement with Defendants Ural and Waterway when Low & Bonar purchased 100% of Walflor's stock. Dkt. # 1-2 at ¶ 4.9. Defendants are correct that the Amended Complaint pleads very few facts to support Plaintiff's claim that Low & Bonar assumed the exclusive distribution agreement. Although Plaintiff alleges that Low & Bonar purchased Walflor's stock via a stock purchase agreement, he admits that the stock purchase agreement did not reference Ural's exclusive distribution agreement with Stuc-O-Flex. Dkt. # 1-2 at ¶¶ 3.35–3.36. Under the agreement, Low & Bonar agreed to "purchase and acquire, all of [Walflor's] Stock." Dkt. # 13-1 at 7. Nowhere in the agreement does Low & Bonar agree to assume liabilities arising from Walflor's alleged distribution agreement with Stuc-O-Flex. See Dkt. # 13-1.

---

[2] In its Opposition, Plaintiff asks the Court to consider facts outside the pleadings and to convert Defendants' motion into a motion for summary judgment under Fed. R. Civ. P. 12(d). The Court declines to do so at this time.

ORDER-5

Contrary to Plaintiff's assertion (Dkt. # 15 at 12), a corporation that executes a stock purchase agreement of another company does not automatically assume all the "benefits and liabilities" of the underlying corporation. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (internal citations omitted). Instead, the Court must consider the extent to which Walflor continued to exist and operate as an independent entity and Low & Bonar's involvement in Walflor after the sale. *See Seattle Inv'rs Syndicate v. W. Dependable Stores of Washington*, 177 Wash. 125, 127 (1934) (" 'Where the new corporation is in its essence but a continuation of the activities and interests of the old company, which retains simply its franchise as a corporation, thus becoming practically extinct as an active entity, direct recovery is allowable.' ") (internal citations omitted). Plaintiff alleges no facts in its breach of contract claim suggesting that Walflor was a mere "shell" of Low & Bonar or that it ceased to operate as an independent entity following the sale.

In its Opposition, Plaintiff points to additional factual evidence obtained through discovery, and ongoing discovery requests that he anticipates will "address the question of Low & Bonar's use of Walflor as a mere instrumentality or alter ego." Dkt. # 15 at 14. But at the motion to dismiss phase, a court typically cannot consider evidence beyond the four corners of the complaint, without converting the motion to a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Plaintiff's conclusory assertion that Low & Bonar assumed the distribution agreement, without any supporting factual allegations, is insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' ").

### 2. **Tortious Interference**

Defendants next argue that Plaintiff has failed to state a claim for tortious interference against any of the defendants. In Washington, a tortious interference claim is comprised of the following elements: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 455 n. 11 (9th Cir. 1994) (citing Restatement (Second) of Torts § 766(B) (1979)); *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wash. 2d 133 (Wash. 1997) (en banc).

To prevail on a tortious interference claim, the plaintiff must show that the defendant's purpose or means were improper. *Maxner Co. v. Costco Wholesale Corp.*, 47 F. App'x 856, 858 (9th Cir. 2002). "Factors to be weighed in determining the impropriety of the defendant's interference are discussed in [the Restatement (Second) of Torts] § 767." *Pleas v. City of Seattle*, 112 Wash. 2d 794, 802 (1989). "Thus a cause of action for tortious interference arises from either the defendant's pursuit of an improper objective of harming the plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships." *Pleas*, at 803-804 (citing *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.,* 582 P.2d 1365, 1368 (1978).

#### 1. Tortious Interference Against Defendants Ural and Waterway

Defendants first move to dismiss Plaintiff's claim for tortious interference against Defendants Ural and Waterway, arguing that the doctrine of tortious interference does not apply to parties to the contract. Dkt. # 12 at 14. The Court agrees. Washington courts have consistently held that the doctrine of tortious interference cannot be applied to individuals or entities that are parties to the contract. *See e.g. Olson v. Scholes*, 17 Wash. App. 383, 390 (1977). Instead, a tortious interference cause

ORDER-7

of action may only be brought against "outsiders" who interfere with the contract. *Id.* If a plaintiff seeks to recover against parties to the contract, the cause of action must "arise from the violation or breach of the contractual relationship." *Id.* (citing *Stauffer v. Fredericksburg Ramada*, Inc., 411 F. Supp. 1136 (E.D. Va. 1976); *Sherman v. Weber Dental Mfg. Co.*, 285 F. Supp. 114 (E.D. Pa. 1968); *Wild v. Rarig*, 302 Minn. 419 (1975), *appeal dismissed*, 424 U.S. 902 (1976); *Hein v. Chrysler Corp.*, 45 Wash. 2d 586 (1954); *Cherberg v. Peoples Nat'l Bank*, 15 Wash. App. 336 (1976). To the extent that Plaintiff seeks to bring a tortious interference claim against Defendants Ural or Waterway, both parties to the exclusive distribution agreement, Plaintiff's claim must be dismissed.

2. <u>Tortious Interference Against Defendants Walflor and Low & Bonar</u>

Defendants also contend that Defendants Walflor and Low & Bonar cannot be held liable for interfering with an agreement that Plaintiff alleges they also assumed because a party to a contract cannot be held liable for interfering with that contract. Dkt. # 12 at 14. Defendants are correct that Plaintiff appears to be alleging two conflicting causes of action, however, under Fed. R. Civ. P. 8(d)(2), parties may set forth alternative claims in a complaint. A pleading "should not be construed as an admission against another alternative or inconsistent pleading in the same case." *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007) (citing *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (internal citation omitted). Moreover, a party "need not use particular words to plead in the alternative" if "it can be reasonably inferred that this is what [it was] doing." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir.), *cert. denied*, 531 U.S. 880 (2000); *see also G-I Holdings, Inc. v. Baron & Budd,* 238 F. Supp. 2d 521, 536 (S.D.N.Y. 2002); *Pair–A–Dice Acquisition Partners, Inc. v. Board of Trustees of the Galveston Wharves*, 185 F.Supp.2d 703, 708 n. 6 (S.D. Tex. 2002).

ORDER-8

Here, there is a legitimate question as to whether Defendants Walflor and Low & Bonar assumed the exclusive distribution agreement, justifying the pleading of alternative claims. Accordingly, the Court declines to dismiss Plaintiff's tortious interference claim on these grounds.

### 3. Tortious Interference Against Non-Contracting Defendants

Finally, Defendants argue that Plaintiff has failed to state a claim of tortious interference against the remaining "non-contracting" defendants. Dkt. # 12 at 14–18. Here, Plaintiff has sufficiently pled the existence of a contractual relationship – the exclusive distribution agreement between Plaintiff and Defendants Ural and Waterway. Dkt. # 1-2 at ¶ 3.12. For the purposes of this motion to dismiss, the Court finds that Plaintiff has also sufficiently alleged that Defendants PacificWest, Hewitt, Walflor, Low & Bonar, and Czerwinski (collectively the "non-contracting Defendants") had knowledge of Defendant Ural's agreement with Plaintiff. Dkt. # 1-2 at ¶ 5.3.

Even the most generous reading of Plaintiff's complaint, however, does not permit the conclusion that the non-contracting Defendants induced or caused a breach of the distribution agreement. Plaintiff alleges that the non-contracting Defendants "intended to interfere with Defendants Ural and Waterway Rainscreen LLC's contractual obligations or should have known that their actions would interfere . . . ." Dkt. # 1-2 at ¶ 5.6. This is insufficient to state a claim for tortious interference. Plaintiff does not allege any facts suggesting that the non-contracting Defendants caused Ural and Waterway to breach their agreement with Plaintiff.

Plaintiff alleges that Ural and Waterway breached the agreement when they sold rainscreen products to PacificWest who, in turn, distributed the products to other customers, but this is not sufficient to show that the non-contracting Defendants caused Ural and Waterway to breach the agreement. Dkt. # 1-2 at ¶ 3.17. Plaintiff's allegations that Defendants Walflor and Low & Bonar sold rainscreen products to other entities are equally unavailing. Dkt. # 1-2 at ¶¶ 3.30, 3.38  While it is plausible to

ORDER-9

conclude that Ural and Waterway intended to breach the agreement, Plaintiff has alleged insufficient facts to show that the non-contracting Defendants caused the breach.

Even assuming the non-contracting Defendants did cause the breach, Plaintiff alleges insufficient facts to establish an improper purpose or improper means. *Pleas*, at 1163. An improper purpose in the context of a tortious interference claim is the "improper objective of harming the plaintiff . . . ." *Pleas v. City of Seattle*, 774 P.2d 1158, 1163 (Wash. 1989). Plaintiff alleges only that the non-contracting Defendants "intended to interfere" with the exclusive distribution agreement but alleges no facts suggesting that they had an improper purpose or motive. At most it is plausible to conclude that the non-contracting Defendants had knowledge of the agreement, but knowledge, without more, is insufficient to state a claim for tortious interference. *Mann Law Grp. v. Digi-Net Techs., Inc.*, No. C13-59RAJ, 2013 WL 3754808, at *4 (W.D. Wash. July 15, 2013) ("mere knowledge . . . does not demonstrate . . . an improper purpose.").

### 4. Tortious Interference with Stuc-O-Flex Customers

Finally, Plaintiff's claim that Defendants "interfered with Plaintiff Stuc-O-Flex's customers" must also fail. In the Amended Complaint, Plaintiff alleges that Defendants "intended to interfere with Plaintiff Stuc-O-Flex's customers in the United States and Canada that Stuc-O-Flex sought to protect when it entered into the Exclusive Distribution Agreement . . . ." Dkt. # 1-2 at ¶ 5.7. Plaintiff's cursory recitation of the elements of the offense, however, is not supported by adequate facts.

For example, Plaintiff does not identify any specific customers or contracts that Defendants purportedly interfered with. To the extent that Plaintiff is alleging Defendants interfered with a "business expectancy," Plaintiff's allegations are still lacking. To make a claim for tortious interference with a business expectancy, Plaintiff must identify a "specific relationship" and "identifiable third parties." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash. 2d 342, 352-353 (2006). Unspecified

ORDER-10

references to "customers" are not enough. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash. 2d 342, 353 n.2 (2006) ("[t]o show a relationship between parties contemplating a contract, it follows that we must know the parties' identities."). Accordingly, the Court finds that Plaintiff has failed to state a claim for tortious interference.

### 3. Alter Ego/Piercing the Veil

Finally, Defendants argue that Plaintiff's alter ego/piercing the veil claim should be dismissed because this is a legal theory, not a stand-alone cause of action. Dkt. # 12 at 18-19. Defendants are correct that a "request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself." *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999). Instead, the "piercing the corporate veil" doctrine should be used to impose liability for other substantive claims. *Holland Am. Line, N.C. v. Orient Denizcilik Turizm Sanayi VE Ticaret*, A.S., No. C17-1726-JCC, 2018 WL 3742197, at *8 (W.D. Wash. Aug. 7, 2018) (holding "alter ego and piercing the corporate veil are 'a means of imposing liability for an underlying cause of action and [are] not a cause of action in and of [themselves].' ") (internal citation omitted). Indeed, Plaintiff concedes that "its claim of alter ego liability and piercing the corporate veil are not separate causes of action from its underlying claims . . ." but argues that it is inappropriate to dismiss legal theories at the motion to dismiss stage. Dkt. # 15 at 20. If Plaintiff wishes to assert liability under the doctrine of "piercing the corporate veil" it must do so within the context of its other substantive causes of action. To the extent Plaintiff is attempting to assert the "alter ego/veil piercing" doctrine as a separate cause of action, this claim is dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss (Dkt. # 12) is **GRANTED**. Within **fourteen (14) days** of this order, Plaintiff may amend its

ORDER-11

complaint to address the deficiencies described in this Order. The Court recognizes that the parties have filed pending motions for summary judgment in this matter that will be impacted by this Order. Accordingly, the Court terminates the pending motions for summary judgment (Dkt. ## 25, 29, 43). The parties will have **sixty (60) days** to re-file their dispositive motions.

DATED this 26th day of September, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge